2003 ME 86

**In re 2003 APPORTIONMENT OF the STATE SENATE and UNITED STATES CONGRESSIONAL DISTRICTS.**

Supreme Judicial Court of Maine.

July 2, 2003.

## FINAL ORDER

[¶ 1] Because the Maine Legislature was unable to reach agreement regarding the reapportionment of the State Senate or the United States Congressional Districts, pursuant to the Constitution of the State of Maine, art. IV, pt. 1, § 2; art. IV, pt. 2, §§ 1–2, and 21–A M.R.S.A. §§ 1206–1206–A (Supp.2002), the Supreme Judicial Court is required to apportion the State Senate and United States Congressional Districts.

## I. PROCEDURAL BACKGROUND

[¶ 2] The Court issued a Preliminary Procedural Order on May 9, 2003, scheduling a public hearing for May 28 and inviting all interested persons to file reapportionment plans, proposals, and comments with the Court prior to June 2. In that order, the Court announced that two public hearings would be held, the first on May 28 and the second after the Court published its proposed plans. Prior to and immediately following the May hearing, the Court received full proposed plans from the Honorable Beverly C. Daggett, Senate President, submitting the Apportionment Commission Congressional Plan and the Democratic Senate Plan; the

Maine Republican Party; and a second proposed plan from the Maine Democratic Party. The Court also received numerous written comments from citizens throughout Maine.

[¶ 3] Following a consideration of the plans and oral and written comments that were presented on or before June 2, the Court published its proposed plans. The Order accompanying the proposed plans set the second public hearing for June 23, and requested that written comments be submitted before noon on that day. At the June 23 hearing, a number of people spoke and offered alternate partial plans.[1] The Court received additional written materials and comments.

[¶ 4] The Court finds that the submitted plans, presentations and comments were extremely helpful and extends its gratitude to all who participated.

## II. THE SENATE REAPPORTIONMENT

[¶ 5] The Court has considered the various suggestions and submissions and has accepted or rejected them as set out below. The changes that have been made to the Court's proposed Senate plan do not result in any further division of individual municipalities or counties, nor do they increase the relative overall population range of 3.57%.

[¶ 6] The suggestions fell roughly into five separate geographic areas. To the extent that any suggestions were made that have not been addressed within this decision, the Court has declined to accept those suggestions.

A. Suggestions Resulting in Changes to the Court's Proposed Senate Plans

1. Aroostook County, Districts 34 and 35

■ [¶ 7] Aroostook County comprises only two Districts. A concern was raised regarding the Court's proposed configuration of those districts because of the size of District 35 and the substantial distance involved in representing that district, in contrast with the much more compact area of proposed District 34. The Court concluded that the concerns raised at the public hearing directly addressed the Constitutional requirement of compactness. After careful consideration, the Court has reconfigured the two districts for Aroostook County, roughly along an east-west line. This configuration was adopted because:

(a) It better meets the constitutional requirement of compactness;

(b) The population ratio of the two districts is better balanced with the new lines;

(c) The change has no effect on bordering districts; and

(d) At the public hearing, no one objected to the proposal of the east-west line, including the representatives of the Democratic and Republican parties, each of whom were specifically asked to comment on the recommendation.

2. Oxford County, Districts 13 and 14

■ [¶ 8] The Court's proposed plan split a community of interest by placing

---

1. The Court heard from the following people at the final public hearing: Portland Mayor James Cloutier; Senator Richard Bennett; Representative Roger Sherman; Rob Brandenstein; Senator Paul Davis; former Senate President Charles Pray; Karin Gerrish; Lorraine Patch; Ronald Patch; Representative Jonathan Courtney; Representative Richard Brown; Representative Oscar Stone; Steven Scharff; Senator Richard Nass; Terren Braggdon; Kevin Lamoreau; Ken Cole; former Congressman David Emery; Phillip Merrill; Gerald Petruccelli; Benjamin Meiklejohn; Representative David Bowles.

Norway and Paris in different districts, Districts 13 and 14. A suggestion was presented that would place both towns in the same district, District 13, while maintaining population parity in Districts 13 and 14. The Court has accepted that suggestion with minor modifications to maintain population parity. The suggestion was accepted because:

(a) It returned a significant community of interest to a single district;

(b) The changes have no effect on other districts;

(c) The population distribution for Districts 13 and 14 as reconfigured fell well within the mean; and

(d) At the public hearing, no one objected to the reconfiguration.

### 3. The Portland Districts, Districts 8 and 9

■ [¶ 9] Portland is the only municipality that is larger in population than a single district.[2] It must by necessity be split into two districts, one of which must be wholly contained within Portland. ME. CONST. art. IV, pt. 1, § 2; art. IV, pt. 2, § 2. The Court established a roughly north-south line to accomplish that goal, taking into account requests from the public filed earlier with the Court, including a request that the City of South Portland not be placed into a district with the City of Portland.

[¶ 10] The City of Portland, while not objecting to the external boundaries of the two Portland districts, has represented that their precinct lines would be more easily administered if the court adopted an east-west line. The Mayor of the City of Portland also represented that a change from the tradition of an east-west line would be cumbersome and expensive for the city. A proposal was presented at the public hearing on June 23 that would maintain the external boundaries of the two Portland districts established by the Court's proposal, but would divide the city along an east-west axis. The proposal has a slightly better population variance than the Court's proposal and creates a compact and contiguous configuration. The suggestion to divide Portland along an east-west axis was accepted because:

(a) It brings the populations of Districts 8 and 9 into nearly total parity;

(b) It creates compact and contiguous districts;

(c) It does not change the external boundaries of the districts and does not affect any districts other than Districts 8 and 9; and

(d) It reduces the prospects of additional costs and administrative difficulties for the City of Portland.

### B. Suggestions Not Accepted by the Court

#### 1. Piscataquis and Penobscot Counties, District 27

■ [¶ 11] Similar to the issues raised regarding Aroostook County, concerns were raised regarding the size of District 27, which spans Piscataquis and Penobscot Counties.

[¶ 12] The Court seriously considered those concerns, recognizing that the proposed configuration of District 27 will require the senator representing the district to travel from Palmyra to Patten and Mount Chase. We therefore considered carefully, and at length, the several different proposals submitted at the public hearing designed to reduce the geographic size

---

**2.** An ideal district would have a population of 36,426. The population of the City of Portland is 64,924.

of District 27. As is demonstrated by the variety of suggestions for addressing the problem, it is not possible to change the configuration of District 27 without substantially affecting Districts 30, 31, 33, and possibly 32 and 25. In each instance, the changes would have a negative effect on population parity, compactness, contiguity, or communities of interest in other districts. Ultimately, the Court concluded that the problems created by changing the configuration of District 27 outweigh the legitimate concerns raised regarding the size of that district. Therefore the Court declines to accept the suggestions regarding District 27.

### 2. York County, Districts 2, 3, 4, and 5

■ [¶ 13] The Court heard from a number of people, including current legislators, regarding a request to include the Town of Lebanon in the same district as the Town of Sanford.[3] In order to achieve population parity, however, the suggested revision changed the configuration of more than just Districts 2 and 3. Ultimately, it affected Districts 2, 3, 4, and 5 creating substantial changes in those districts.

[¶ 14] The Court therefore attempted to address the request without causing a ripple effect into other districts. Notwithstanding the Court's efforts, we were not able to accommodate the Lebanon/Sanford request without substantially affecting several other districts in ways that the court determined were not acceptable. Therefore, the Court has declined to accept the suggested changes to the York County districts.

---

**3.** Although we recognize the existence of a community of interest among the citizens of Lebanon and Sanford, there also exists a community of interest among the Alfred and Sanford citizens. Because of population size,

### III.  THE CONGRESSIONAL REAPPORTIONMENT

■■ [¶ 15] Many comments received by the Court addressed the proposed configuration of Maine's two Congressional Districts. The Court heard from a number of Knox County residents who indicated a preference for remaining in the First District. In addition, a significant issue of geographic size has been raised regarding the Court's proposed configuration of District Two. It was represented to the Court that District Two is the largest Congressional District east of the Mississippi River and that the Court's proposal would significantly increase its size and create an additional travel burden on the representative from the Second District. To the extent that the Court can avoid adding a substantial geographic increase and burden on travel, we must attempt to do so.

[¶ 16] Therefore, the Court has crafted a new configuration that would reduce the added square miles and travel challenges that resulted from the Court's proposed plan, while at the same time fulfilling the Court's responsibility to minimize divisions of counties, municipalities, and communities of interest. We have done so by dividing only one county, Kennebec, and dividing it in such a way that no municipalities are divided and communities of interest are kept together. The Court's final plan meets several objectives:

(a) It reduces the population overall range of the Districts from 41 to 23;

(b) It reduces the added miles and travel burden in District Two;

(c) It divides only one county;

(d) It preserves communities of interest as much as possible;

it is not feasible to create a district that includes both the Lebanon–Berwick–North Berwick area (a school district) and the Sanford–Alfred area.

(e) It moves fewer communities into different districts; and

(f) It maintains the long-standing presence of Knox County in District One.

## IV. FINAL PLANS

[¶ 17] Accordingly, the Court unanimously apportions the State of Maine into Senate Districts described in the following documents:

Final Senate 2003 Plan Components Report

Final Senate Map 2003

[¶ 18] The Court unanimously apportions the state into Congressional Districts described in the following documents:

Final Congressional 2003 Plan Components Report

Final Congressional Map 2003

[¶ 19] The Final Plan for the Senate has the following characteristics:

| | |
|---|---|
| Relative Mean Deviation: | 0.97% |
| Population overall range: | 3.57% |
| Roeck compactness: | .4 |
| Towns splits: | 4 |

(Biddeford, Portland, Scarborough, Westbrook)

| | |
|---|---|
| Districts with one county: | 23 |
| Districts with two counties: | 8 |
| Districts with three counties: | 4 |

[¶ 20] The Final Plan for the Congressional Districts has the following characteristics:

| | |
|---|---|
| Relative mean Deviation: | 0.00% |
| Population overall range: | .01 |
| Absolute population range: | −12 to 11 |
| Roeck compactness: | 0.43 |
| County splits: | 1 |

[¶ 21] A copy of this final order of apportionment will be provided to the Office of the Revisor of Statutes along with the details in electronic format so that the report can be converted into geographic descriptions to be appended to the original of this order. Copies of this order and the preliminary order shall be filed with the Secretary of State.